May it please the Court. My name is Caitlin Eastman and my co-counsel is Ms. Sarah Gerdes. Today we represent the appellant, Ms. Marie Escobedo, who is here with us today. The District Court should be reversed for the following two reasons, which my co-counsel and I will address in turn. First, Ms. Escobedo's complaint was timely because it was constructively filed with the Court. And second, Ms. Escobedo's application to proceed in form of hoperus should have been granted. I'll take six minutes to discuss the constructive filing issue, my co-counsel will take six minutes to discuss the IFP issue, and we will reserve three minutes of our time for rebuttal. Your Honors, this is a very straightforward case. To affirm the District Court, this Court would have to hold that the viability of a litigant's complaint rests solely on the amount of time it takes a particular judge to evaluate his or her IFP application. This is not and should not be the law. Here, Ms. Escobedo lodged her complaint alongside her application to proceed in form of hoperus within the statute of limitations. The fact that her IFP application was denied after expiration of the 90 days is irrelevant because she still complied with the District Court's August 5, 2011 deadline to pay her fees. Numerous authorities support a reversal here, namely this Court's decisions in which this Court asked us to address in its pro bono order. In Loya and Cintron, the plaintiffs lodged their complaint in a timely manner. However, their complaints were deemed untimely because of certain deficiencies in regard to the court rules. However, this Court held that failure to comply with court rules at the time of submission should not bar timely filing. Furthermore, in this Court's unpublished Baker opinion, where the facts are certainly equivalent to the facts of Ms. Escobedo's here, Mr. Baker lodged his IFP application alongside his complaint within the 90-day time frame. Your adversary suggests that the Baker facts are more sympathetic than the facts here. What do you say to that? There's certainly no difference between the facts in Baker and the facts in Escobedo. Apple Nevada suggests that the difference is that Baker acted in good faith and acted quickly in filing his fees. But the reality here is that Ms. Escobedo was acting in good faith. She did lodge her complaint in her application within the 90-day time period. And furthermore, she complied with the District Court's August 5, 2011 deadline. Told otherwise would be to say that individuals cannot reasonably rely on the guidelines that the District Court sets for them. The magistrate judge gave her a specific amount of time. Is that correct? Yes, Your Honor. The District Court judge gave her until August 5 to pay her filing fees, and she did so. He made some kind of ambiguous statements, though, about how he wasn't going to prevent the defendant from filing a motion to dismiss based on the statute of limitations or something of that nature as part of that colloquy there. And the appellee relies upon that, suggesting that the issue of the statute of limitations was left open, actually, and there was no guarantee that the paying fee within 30 days was on the record. What do you say about that? Your Honor, the issue of the statute of limitations certainly is not subject to – it was not ambiguous for Ms. Escobedo. She is a pro se litigant. English is her second language. And she was heavily relying on the District Court's assurance that she should pay her fees by August 5, 2011. Whether or not she paid the fees. What does our law say about constructive filing of complaints? I mean, the complaint was clearly lodged with the court when she filed her application for the IFP status, right? Correct, Your Honor. Okay, so what does our law say about that? The most applicable laws here are this Court's decisions in Cintron v. Loyola. And they both hold that failure to comply with court rules at the time of submission should not bar timely filing. So because she was – Does it make a difference if this was a statute? No, not necessarily, Your Honor. The fact that she acted in accordance with the law is actually unlike the plaintiffs in Cintron and Loyola. When she filed her – when she lodged her complaint and her IFP application, she was acting in accordance with the IFP statute. And she performed both of those actions within the 90 days. It's out of her hands how much time it takes the District Court judge to evaluate her application. And then even so, she did pay the fees by that August 5 date. So is this a – would this be a question of first impression in the Ninth Circuit, whether very specifically if you file your complaint along with your request for IFP status, that that is deemed filing regardless of what happens on your IFP? Yes, Your Honor, outside of the Baker opinion, which notably is – Baker's not published, right? Yes, that is correct, Your Honor. The one published case, though, dealt with the local rules. Is that correct? Yes. Both Loyola and Cintron actually dealt with the local rules. One dealt with – it was a failure to punch. Yes, yes. Cintron dealt with – And the punch. Yeah. In Cintron, there was no whole punch, no civil cover sheet, and then an incorrect filing fee. And in Loyola, it was – They paid too much, if I remember correctly. Yes, that is correct, Your Honor. And in Loyola, they had pages where the paper was too big. That is also correct, Your Honor. However, because she did act in accordance with the law at the time of lodging both her application and her complaint, her case is distinguishable from those specific cases in the sense that they were not complying with specific court rules at the actual time of lodging their complaint. Now, filing a notice of appeal is instructive by analogy. And for that, we direct you to Parisi v. Telecron, a Supreme Court case that holds that the failure to pay filing fees with a notice of appeal does not affect the timeliness of that appeal. If Your Honor has no further questions about the constructive filing, I'll have my co-counsel discuss the IFP issue. All right. Thank you. May it please the Court. This case is about access to the courts. The improper denial of Ms. Escobedo's IFP status impeded her ability to have her day in court. She should have been granted IFP status because she did not have sufficient funds to both pay the filing fee and provide for the necessities of life. Under the broadest calculation of Ms. Escobedo's assets, the filing fee constituted more than 13 percent of her entire family's monthly income. Is there a rule of thumb? Unfortunately not, Your Honor, which is why it would be helpful for this Court to offer some guidance here today. Well, what do you suggest? Your Honor, while we would argue that adopting a bright-line rule of asking a litigant to pay more than 10 percent of their entire family's monthly income would be reasonable for this Court to do so today, we also acknowledge that this Court might not be willing to make such a broad pronouncement. So we ask that on these facts in this case, when looking to Ms. Escobedo's assets, that asking her to pay more than 13 percent of her entire family's monthly income was an abuse of discretion. That's if you attribute her husband's Social Security income? Some of her husband's Social Security? Yes, Your Honor. That's if you consider all of her husband's Social Security benefits. And her UI benefits? Yes, Your Honor. And that is even without considering any of her husband's liabilities, medical expenses, transportation costs, or any other life necessities. Or whether he even wanted her to file the lawsuit. He might not have thought the lawsuit was a very good idea. Correct, Your Honor. His income would have been folded into the arithmetic. Yes, Your Honor, which is why we argue it was improper for the district court to consider her husband's assets in the first place. District courts rely on the particular IFP application form when deciding whether or not a litigant should be granted IFP status. Now, the application form itself asks for the litigant's income. It does not inquire into spousal income. How can we say that the district court judge abused his discretion when there was no yardstick to measure that discretion? As you said before, there's no rule of thumb. I would be willing to bet that the decisions in this area are very inconsistent from one court and even one judicial officer to the next. But how can we say there was an abuse of discretion when there's no standard against which we can measure the exercise of discretion? Your Honor, this court in Chang v. United States stated that an abuse of discretion is when the district court rules in an irrational manner. Now, here, looking to the facts in this case, Ms. Escobedo was only receiving $210 a week in unemployment benefits. Her husband was also receiving Social Security benefits. $1,800. Yes, correct. But when looking to those limited funds, asking a litigant to pay $350 to merely gain access to the courts here based on how truly limited her funds were was an abuse of discretion. Now, Your Honor pointed out that part of the problem here is that district courts lack guidance. So it would be helpful for this court to potentially make some sort of bright-line rule, but also to just file an or, excuse me, issue an opinion showing some sort of guidance so litigants could have some sort of authority to rely upon when deciding whether or not it is likely that they would be granted or denied IFP status. Doesn't the uncertainty with regard to whether your IFP is going to get approved dovetail with the argument that we should recognize the constructive filing? Because a litigant of modest means trying to go to court doesn't know whether to donor aunts, uncles, cousins, and whatever to get the $350 because she has no idea or a very vague idea of whether her income would qualify her for IFP. And if she guesses wrong and the magistrate judge takes under advisement for months, she's out of luck. Yes, Your Honor. That would further support the constructive filing. However, ultimately what we ask this Court to do here today is to allow Ms. Escobedo to gain access to the courts, whether it be under constructive filing, which there is certainly plenty of precedent for this Court to rely upon, that when she lodged her complaint with her IFP application, that effectively was timely, but also under equitable tolling, or that her IFP status should have been granted in the first place. Now, because it should have been granted and should have been at that point, Ms. Escobedo's complaint would have been timely filed at that moment. What do you do with the fact that she did pay the $350? Does that make any – does that fit in the calculus in any way? If anything, Your Honor, it just shows how diligent Ms. Escobedo was, that she was able to scrounge enough money to pay that filing fee. We don't know. She may have gone to her husband and asked her husband for $350. We don't know that she scrounged, do we? The problem is we don't know. We don't know what sacrifices she might have had to make. She might have had to forgo any sort of medical treatment, might have had to skimp out on purchasing food. Who knows? But the point is that Ms. Escobedo complied with the district courts. It's possible. However, she did comply with the district courts deadline of August 5th, and she was able to scrounge enough money to pay the filing fee, showing her desire to have her address for the harassment, retaliation, and discrimination that she suffered. Now, if Your Honors have no further – I do. So I was trying to figure out – so what are the courts – there's some suggestion, Adkins, in the Supreme Court, that if you just fill out an application and certify to the facts, that you should be granted IFP status. And I was trying to figure out, so what do the courts do with these filing fees? And we learned that the statute requires a filing fee of $350, and that of that, $190 is deposited into a special fund of the Treasury. So I'm just wondering, where does the rest of the money go? I mean, does it go to the coffee in the Attorney's Lounge? I'm not sure, Your Honor. I'm wondering if there's any cases that – I mean, if there's – if it's an all-or-nothing thing, if you could maybe say, okay, pay the $190 that's required by statute to go to the Federal Treasury, but not the entire amount of $350. Your Honor, that could potentially be a solution and offer some guidance to the lower courts. However, even asking Ms. Escobedo to pay upwards of $150 would likely impede her ability to provide for the necessities of life when she was surviving on such limited funds. Well, the statute allows the district court to reduce the fee. Yes, Your Honor. The district court could say, okay, you can pay $50. However – $50, and you're in. Yes, but that's not what the district court asked Ms. Escobedo to do in this instance. You know, in the state court system, they do – if you receive certain kinds of government benefits, you're automatically deemed eligible for – to proceed in formal powers. And we would argue, based on the fact that Ms. Escobedo was already the public – or object of public support because she was receiving unemployment benefits and because her husband was receiving Social Security benefits, that she should have been granted IFP status. That's the other thing that struck me as odd about this case, is that the money that was being counted toward the total amount of income was money that they were getting through government welfare, Social Security, and unemployment – unemployment, arguably, because of the very conduct of the plaintiff – of the defendant she was trying to sue here. So it does seem odd, and it seems to cry out for some sort of rule. Exactly, Your Honor. And further, the Supreme Court in Atkins stated that the purpose of the IFP statute was to not have litigants pay fines up until the point where they become the object of public support. Now, Ms. Escobedo and her husband, again, were already relying on such support. Okay. Thank you. May it please the Court, my name is Melissa Griffin. I represent Apple American Group and Apple Nevada, the respondents in this case. To start out on a positive note, we're happy to see that the appellant was not discussing the issue of service in this case. It's clear from the filings that we stipulate that Apple Nevada LLC is properly served, appearing in the case, and that – You gave this pro se plaintiff quite the runaround. I personally did not give this pro se plaintiff quite the runaround. Your firm and your client did? Actually, the initial complaint was sent to Applebee's Services International. There's no such entity as Applebee's, and the lawyer in that case works for Applebee's Services International, which is not in any way affiliated with Apple American Group. She's the one who instructed the appellant to file against Apple American Group, which was incorrect. So we were not necessarily responsible for – It's not your firm, but it's your client that defended this case that was given, giving Ms. Escovedo the runaround as to who was the correct person to sue. Again, the runaround, or the initial improper direction, came from Applebee's Services International, not a company that is in any way a party to this case or affiliated with Apple American Group or Apple Nevada. Again, when she filed against Apple American Group, she was quickly instructed to file against Apple Nevada. Again, I'm trying to say we're fine, and we stipulate that the service issue is no longer a problem. And the relatedness issue is also out, right, because the complaint has served on the incorrect defendants' – the current complaint relates back to the initial filing. Yes, Your Honor. All right. And Apple American is no longer a defendant. Right. Okay. Okay. Why didn't the district court magistrate judge or the district court abuse its discretion in denying the application for – Why didn't he – Why didn't it abuse its discretion? Why didn't it? Because the judge found that she was capable of – that she – Based on what? Based on her total monthly income, which is more – Which is twice – more than twice – Let me ask you this. Wouldn't you think that if you're going to attribute her – part of the husband's income to her, that you would at least ask and inquire about what his expenses might be? Well, that's something the judge could have done, and maybe the judge at the time – Well, then why is there adequate evidence to support his determination that she couldn't – that she could afford to pay? Because her total income was more than twice the poverty rate for a household of two people. It's over $30,000, where the poverty rate for an income – I'm sorry, a household of two people in 2011 was $14,000. But her only income, to the extent it's considered income, was unemployment insurance benefits and her husband's Social Security benefits. That's right, Your Honor. But we dispute the fact – the notion that those are public benefits. That's not welfare. Unemployment is a pot of money that employers pay into on behalf of their employees that the employees take out later. And the employees also pay into that. Employees – exactly. So this is not – again, it's not welfare in this case, and certainly Social Security benefits are similarly something people pay into and then later take out of. What was the amount she was getting, $190? It varies. She initially said it was $210. Then at the hearing, she said that it was $180. So she's bringing home less than $1,000 a month? Yes, Your Honor, according to her, around $700 a month. Yeah, multiplying times 4.3. And you're saying – suppose she wasn't married. Suppose she was single and he had denied it. Would you say that that was an abuse of discretion? Well, that's not what we have before us. And to your point, there is no bright line. The judge – the abuse of discretion standard basically says is it beyond the pale? Is it patently irrational? In this case, you know, we submit that it's not. Well, the reason that I'm pressing you on that is because we have a question as to whether it was appropriate to include the husband's income at all. And so if we decide that it was not appropriate to include the husband's income, are you dead in the water? Are you out? Would you still be arguing, if we made the decision that the husband's income should never have been considered, would you still be arguing that it was no abuse of discretion to expect somebody to pay $350 as a filing fee when they make less than $1,000 a month for all their expenses? Assuming that's true, assuming it was just less than $1,000 a month, the judge in this case said very clearly that he was ruling that he was going to dismiss her IFP petition because of her household income. And he said that directly after learning of her husband's income. So it would seem to reason that in the absence of her husband's income, he would probably not have said that her household income was enough to require dismissal of the IFP petition. So if you decide that he shouldn't have considered the husband's income, you lose? Well, I don't lose necessarily. Not necessarily. She should be able to proceed and inform her property. Right. Filing fee back. Yeah, that gets to the, you didn't, I mean, your client didn't oppose her IFP request, did it? No, we were not notified nor party to the hearing or the case. So why are you defending the district court decision to deny it now? Shouldn't you, wouldn't really, I mean, it makes no difference to the question of the statute of limitations, so why are you arguing, defending the denial of IFP status here? Well, we specifically argue that we should not be defending and that it's not properly brought in this proceeding where, again, we are the party to the case. We specifically state that, you know, appellant was wrong to bring it up in this proceeding, so to sort of. She can bring it up, but I don't see Appleby's interest in defending the district court's decision. It's really something between her and the court, and she can bring it up and raise it as error. I'm trying to understand what the connection is in your mind between sustaining the district court's IFP determination and the question on the statute of limitations, the 90 days period. Well, because, Your Honor, as you pointed out, there is an issue of first impression here, and that is what happens when an IFP petition is denied, right? I know it should be what happens when a complaint is filed in conjunction with an IFP application. Well, and that's great. I guess we're right to the point that we were initially asked to address here, and that is the relevance of the constructive filing rule in this case, in particular in light of the Loya case. So in the Loya case, there were sort of two things happening. On the one hand, you had in 1975, Title VII statute of limitations was a jurisdictional requirement. That's something the Loya case points out that they were looking at. On the other hand, you had clerks sort of tossing out cases over rules like hole punching and size of paper. And Loya specifically says it's creating this constructive filing rule and is applying it in this case to sort of deal with the tension of these two things that are leading to maybe unfair results. In Loya, they didn't have the option of equitable tolling, so they had to kind of find a way to make that first filing stick. In this case, the court doesn't need to rely on that June 2nd filing. The court can rely on equitable tolling and allow for the August filing to be the proper one, which is, again, not something that was accessible to the Loya court back in 1975. Why would you want to rely on equitable tolling? I'm saying you should rely on equitable tolling, not the constructive. I don't understand why. I mean, I don't understand why we would go to equitable tolling. She filed that complaint on a certain date, along with her IFP application, and I don't know why it wasn't deemed filed at that time. Subject to, if she didn't pay the fee or if the district court subsequently determined she couldn't proceed in formal practice, that the complaint could be subject to dismissal. Because the Nevada courts require payment of filing fees, and the courts have recognized that it is not just a page stamping. Is payment of filing fees a jurisdictional requirement? No, no. But it is more than just stapling and page sizes and hole punching. It is more than a local rule. And courts have clearly stated that, and we briefed that. But in this case, the Nevada courts do require that prepayment of filing, as they are permitted to do by statute. Sometimes I recall from my days on the district court, and I don't know, maybe Judge Ponzo and Judge Wardlaw both remember this. Or maybe I'm even thinking about state court. You know, sometimes people write checks, file their complaints, they write a check, the clerk would file it, and then lo and behold, guess what happens? The check bounces. And we would issue orders saying you either pay the filing fee or we're going to dismiss your case. Isn't that the simplest way to resolve this?  Simply find that the complaint was constructively filed when it came over the counter. It might be the simplest way, but it's not necessarily the most equitable way, again, in light of the fact that filing fees are required by the district court of Nevada. And even in the notice of hearing on the IFP motion, it said, I have reviewed your record and I have reviewed your proposed complaint. You just used the word equitable. This is not specific to D-Nevada, okay? Every single district court requires filing fees. And we did say in Baker, and that's persuasive, although not precedential, that once the complaint is in the hands of the clerk, it is deemed filed. Yes, Your Honor, but in that case, it was another sort of clerical error. What happened was Baker did not submit an affidavit of poverty with his IFP petition, so the judge rejected it based on a matter of form, if you will. It was not a substantive review of his assets that resulted in the rejection of his petition. So I don't understand your distinction. What case stands for this distinction that you're making, clerical error between denial on the merits? Well, to your point, this is a case of first impression because there's no case that treats filing fees exactly like an administrative issue, like hole-punching. What's your logical distinction? What's the argument that that should be treated any differently once the complaint is in the hands of the clerk? Because the case is a rule. The filing fees are not trivial. They are not just local rules. They are maybe not jurisdictional, but they are more important and sit at a higher level than hole-punching and page size. Why? I don't understand why. You pay it? You've got to pay the money? It's non-substantive. Yes. Well, Your Honor, the court in Jarek seemed to think that it was not the same thing as hole-punching and paper sizes. Jarek doesn't help you, though, does it, the Tenth Circuit case? Yes, it's the Tenth Circuit case. Yes. It's strong support for the appellant in this case, isn't it? Well, the facts are different in that case, but the fact that the court recognized that filing fees are not the same thing as hole-punching. Yes. And then they assisted the person who was filing in that case. They ended up going the way of the appellant here in Jarek. Of course. But, again, there are factual distinctions between that case and this case. But you're arguing for a rule that makes it a game of chance as to whether the complaint is going to be deemed timely filed or not. Because if the IFP is granted, it's timely filed. But if it's denied, it's not. That's the rule you're arguing for. Not necessarily, Your Honors. You can certainly equitably toll for the time that the court is considering the whatever is left in that statute of limitations is what is the remainder that the plaintiff has access to in the case. What stands for that, for equitable tolling? For equitable tolling? A number of cases. Appellant requests in this case equitable tolling for the time. That was an alternative argument. Yes. But it was an argument that appellant made in this case. One way to do this is to simply say for those 34 days that the court is considering your IP petition, then we're going to equitably toll. And then at the end, you've got, you know, whatever is remaining. The court in Rice, in a Title VII case where someone actually used the Title VII provision to request a fee waiver, did the same thing and basically said we tolled while the court is considering your request for a filing fee. But then you have whatever is left in the tail. It seems to me, though, that if you're going to respect the Supreme Court's statements in Atkinson that people of limited means, indigent people who need access to the courts, that you need to recognize that when they file their applications, they're going to be able to take advantage of that. When they file their application and they are required to file a complaint with their application to start a lawsuit, that the complaint has to be deemed filed when they submit it to the clerk. If it is. It does not further that principle. If it is approved. But there's another principle here, and that's that an IFP status is a privilege. It's not a right. It's something that persons aren't entitled to necessarily. Yes, but if it's denied, you can always tell the complainant, the plaintiff, you either pay or your case is going to be dismissed. And that's what the court said in this case. But treating the complaint filed as of the time they submit the application, first submitted as Judge Wardlaw said, submitted to the clerk, it's deemed  filed if the filing fee is paid within a reasonable amount of time. And it's. We have a slightly different way of looking about how you go about ensuring the right of somebody of limited means to access the Federal courts. And all they need to do is file the filing fee within a reasonable amount of time, and this court could rule that it could relate back to the initial filing date. And having said that, in this case, we submit that it was the 29 days later is not a reasonable amount of time. Even though the person said you can file within 30 days, 29 days later is not reasonable? And he explicitly said that he's not addressing. And he explicitly said that he's not addressing the issue of statute of limitations and warned her that she might face a motion to dismiss based on this issue and asked her. That's not a motion between 29 and 30 days. That's some ambiguous language you included there. But 29 days, if somebody gets 30 days to do something and they do it in 29 days, they've complied with the 30-day deadline, right? Well, Your Honor, yes. She complied with the deadline to submit the filing fee, but not the deadline to file her complaint for the Title VII purposes. In this case, the judge can't extend the statute of limitations beyond 90 days. The only thing available is equitable tolling, which he explicitly did not do in this case. I see my time is up. For the foregoing reasons and the reasons we briefed, we request that this Court uphold the lower court's dismissal. Thank you. Thank you. We've got a couple minutes left, I believe. Your Honors, just two brief points on rebuttal. First, to the IFP issue, it's important to emphasize that we are not aware of Ms. Escobedo's husband's expenses and liabilities, and thus, because she's already an object of public support, it's important to grant her IFP petition. And second, to the constructive filing issue, the payment of fees itself is not critical to the timely filing, as Your Honor has emphasized. It's non-substantive, and she should not be punished for the district court judge taking more than that 90-day time period to evaluate her IFP application. Furthermore, to distinguish a couple of the cases that Apple Nevada cites, they rely on rice. However, in rice, both the plaintiffs simply only lodged their IFP application and not an actual complaint, whereas here, Ms. Escobedo did lodge an application and her complaint. And then furthermore, looking to that Tenth Circuit opinion, the Jarrett opinion, as Your Honor noted, that is very favorable to the appellants, looking to that alternative argument of equitable tolling in the sense that the Tenth Circuit and actually the Seventh Circuit joins it as well. They both hold that the statute of limitations should be told while an IFP application is pending and then for a reasonable amount of time to collect and pay those fees. That is exactly what happened here, and it's for those reasons that this Court should reverse the district court's decision. Thank you. Thanks again to Pepperdine Law School for participating as pro bono, and an excellent argument on both sides. Thank you very much.
judges: Ponsor, Wardlaw, Paez